## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TIMOTHY SPICER #99634**                         **CIVIL ACTION**

**versus**                                        **NO. 07-3770**

**BURL CAIN, WARDEN**                             **SECTION: "I" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Timothy Spicer, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On July 15, 2003, he was convicted of armed robbery in violation of Louisiana law.[2]  On September 18, 2003, he was found to be a third offender and was sentenced as such to a term of sixty-six years imprisonment without benefit of probation, parole, or suspension of sentence.[3]  On October 29, 2004, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court a related writ application which was denied on May 6, 2005.[5]

On September 8, 2005, petitioner filed with the state district court an application for post-conviction relief.[6]  That application was denied on October 5, 2005.[7]  Petitioner's related writ applications were denied by the Louisiana First Circuit Court of Appeal on January 26, 2006,[8] May

---

[2] State Rec., Vol. IX of XI, transcript of July 15, 2003, p. 53; State Rec., Vol. I of XI, minute entry dated July 15, 2003; State Rec., Vol. VII of XI, jury verdict form.  The instant federal application relates to petitioner's third trial on the criminal charge.  His convictions at the first two trials were reversed on direct appeal.  State v. Spicer, No. 99-KA-0370 (La. App. 1st Cir. Nov. 5, 1999) (unpublished); State Rec., Vol. I of XI; State v. Spicer, No. 2001-KA-2067 (La. App. 1st Cir. Mar. 28, 2002) (unpublished); State Rec., Vol. VII of XI.

[3] State Rec., Vol. IX of XI, transcript of September 18, 2003, pp. 9-11; State Rec., Vol. I of XI, minute entry dated September 18, 2003.

[4] State v. Spicer, No. 2004-KA-0587 (La. App. 1st Cir. Oct. 29, 2004) (unpublished); State Rec., Vol. X of XI.

[5] State v. Spicer, 901 So.2d 1096 (La. 2005) (No. 2005-KO-0327); State Rec., Vol. X of XI.

[6] State Rec., Vol. X of XI.

[7] State Rec., Vol. X of XI, Order dated October 5, 2005.

[8] State v. Spicer, No. 2005-KW-2355 (La. App. 1st Cir. Jan. 26, 2006) (unpublished); State Rec., Vol. X of XI.

30, 2006,[9] September 18, 2006,[10] and January 8, 2007,[11] and by the Louisiana Supreme Court on December 15, 2006.[12]

On June 11, 2007, petitioner filed the instant federal application for *habeas corpus* relief.  In support of his application, petitioner raises the following claims:

1. The prosecutor knowingly elicited perjured testimony to obtain the conviction;

2. The trial court erred in allowing introduction of an invalid confession; and

3. Petitioner received ineffective assistance of counsel.[13]

<u>Timeliness</u>

In its response in this proceeding, the state argues that petitioner's federal application is untimely.  The state is incorrect.

---

[9]  <u>State v. Spicer</u>, No. 2006-KW-0377 (La. App. 1st Cir. May 30, 2006) (unpublished); State Rec., Vol. X of XI.

[10]  <u>State v. Spicer</u>, No. 2006-KW-1513 (La. App. 1st Cir. Sept. 18, 2006) (unpublished); State Rec., Vol. X of XI.

[11]  <u>State v. Spicer</u>, No. 2006-KW-2125 (La. App. 1st Cir. Jan. 8, 2007) (unpublished); State Rec., Vol. X of XI.

[12]  <u>State *ex rel.* Spicer v. State</u>, 944 So.2d 1278 (La. 2006) (No. 2006-KH-1096); State Rec., Vol. X of XI.

[13]  In his federal application, the ineffective assistance claims were presented as four separate claims.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[14]

As noted, on May 6, 2005, the Louisiana Supreme Court denied petitioner's writ application challenging the state intermediate appellate court's judgment affirming his conviction and sentence. For AEDPA purposes, his conviction became "final" ninety (90) days later when his period expired for seeking a writ of certiorari from the United States Supreme Court. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1). Accordingly, petitioner's period for seeking federal *habeas corpus* relief commenced on August 4, 2005, and expired one year later, unless that deadline was extended through tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). Thirty-four (34) days of petitioner's one-year statute of limitations elapsed prior to being tolled by the filing of

---

[14] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

his state post-conviction application on September 8, 2005.[15]  Although that application was denied, tolling continued uninterrupted until December 15, 2006, when the Louisiana Supreme Court denied the related writ application.  See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).

At that point, a total of three hundred thirty-one (331) days of the one-year period remained.  Even if the Court ignores the additional tolling credit to which petitioner is entitled for to his final writ application filed with the Louisiana First Circuit Court of Appeal,[16] petitioner's federal application is clearly timely because it was filed one hundred seventy-eight (178) days later on June 11, 2007.[17]

In light of that fact, as well as the fact that the state "admits" that petitioner exhausted his state court remedies,[18] the Court will address the merits of petitioner's claims.

_____

[15]  The state district court date-stamped that application as having been filed on September 13, 2005; however, petitioner signed the application on September 8, 2005.  Out of an abundance of caution, this Court will consider the application to have been filed on the date it was signed.  See Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006) (federal courts must apply Louisiana's "mailbox rule" when determining the filing date for state court filings).

[16]  Petitioner would clearly be entitled to further tolling credit for his writ application in case number 2006-KW-2125, which was denied on January 8, 2007.  However, because it is not evident from the record when the writ application was filed, it is unclear how much additional tolling credit he should receive based on that application.

[17]  Petitioner signed his federal habeas corpus application on June 11, 2007.  Rec. Doc. 1.  That date represents the earliest date that he could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his habeas petition to have been filed for statute of limitations purposes.  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

[18]  Rec. Doc. 6, p. 2, ¶ 3.  The Court notes that, despite that admission, the state later contends that petitioner has not exhausted his state court remedies as to his claim that the trial court erred in allowing introduction of an invalid confession.  Rec. Doc. 6, supporting memorandum, p. 4.  Nevertheless, it appears that the claim regarding the confession is in fact exhausted.  Generally, the

Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus

exhaustion requirement is satisfied when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988). Petitioner's claim regarding the confession was asserted to the Louisiana Supreme Court as the first claim in his writ application in case number 2006-KH-1096. State Rec., Vol. XI of XI. However, in any event, even if there were an exhaustion problem, federal law "allows a federal court, in its discretion, to *deny habeas relief* on the merits, regardless of whether the applicant has exhausted state remedies" and whether exhaustion is waived by the state. Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original); 28 U.S.C. § 2254(b)(2).

of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1); <u>Hill</u>, 210 F.3d at 485.

Facts

On direct appeal, the state appellate courts did not summarize the facts of the case. Therefore, based on its independent review of the transcripts,[19] this Court finds that the facts of this case are as follows.

The state's first witness was Matthew Lelrich.  He testified that, while he was working at the Easy Serve in Lacombe, Louisiana, "a gentleman came in with a shirt over his head and a knife in his hand and demanded that I open the cash register and give him the money."[20] When Lelrich was unable to open the cash register, the robber simply stole the entire register.  The police subsequently found the register and returned it to the store with the money still inside. Lelrich was unable to identify petitioner as the robber.

---

[19]  The trial transcripts are included in Volumes VIII and IX of the state court record.

[20]  State Rec., Vol. VIII of XI, transcript of July 14, 2003, p. 164.

The state's second witness was Detective Bobby Juge of the St. Tammany Parish Sheriff's Office. Juge investigated the robbery at the Easy Serve on June 24, 1997. During the course of the investigation, officers recovered the robber's shirt and knife and the store's cash register. Juge testified that he reviewed the store's surveillance tapes which showed a black male enter the store with a knife and then exit the store with the cash register. The tape also showed that the robber had a mole on the lower left side of his spine. Juge later learned that petitioner has a similar mole.

In connection with the investigation, Juge interviewed Patricia Marshall, who was petitioner's girlfriend at the time, and she identified the recovered shirt as belonging to him and stated that the recovered knife appeared to be from a set belonging to her. She further stated that petitioner had no shirt when he returned on the evening of the robbery.

Juge testified that petitioner was subsequently arrested and, upon questioning, admitted that the officers had "the right man" and that he would give a statement later with his lawyer present; however, no such subsequent statement was ever given.[21]

The state's next witness was Captain James Weary. When recounting his interview of petitioner following the arrest, Weary testified:

> As I was talking to Timothy Spicer, I asked him if he had done that, and he said he did. He did the armed robbery. I told him I didn't understand that. He said, "You got me with my hands in the cookie jar and I done it." He also said, "I was on drugs and needed money."[22]

---

[21] State Rec., Vol. VIII of XI, transcript of July 14, 2003, p. 194.

[22] State Rec., Vol. VIII of XI, transcript of July 14, 2003, p. 207.

The state also called Patricia Marshall to testify at trial.  She testified that, at the time of the robbery, she and petitioner were close friends.  She further testified that, in the early morning hours after the robbery, she met with petitioner.  She described the meeting as follows:

> He told me he had got in a riot with some guys from Lacombe, like a little fight or whatever.  He had left – he went to the store.  He did mention that he went to the store and he had got the register and he dropped it.  He heard the cops.  He ran through the woods.  He was in the swamps for like two hours, and he went by his sister's and he left his sister's and came by me.  That was his story.[23]

She also identified the robber in the photograph from the store's surveillance video as petitioner, the knife recovered by the police as one from a set belonging to her, and the shirt recovered by the police as belonging to petitioner.  She stated that, when she met with petitioner on the morning of the robbery, he was not wearing a shirt and his shoes were muddy.

After Marshall's testimony, the prosecution rested its case.

The defense called no witnesses at trial.

<u>Perjury</u>

Petitioner claims that the prosecutor knowingly elicited perjured testimony from Patricia Marshall to obtain the conviction.  Specifically, petitioner claims that Marshall's testimony regarding his purported confession to her was a lie.

For a petitioner to establish that his constitutional rights have been violated by the introduction of perjured testimony, he "must show (1) the *actual falsity* of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution *knew* the witness's testimony was

---

[23]  State Rec., Vol. IX of XI, transcript of July 15, 2003, p. 14.

false." Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001) (emphasis added).  In this case,

petitioner has presented no evidence whatsoever that the trial testimony was in fact false, much less

that the prosecution knew it was false.  Petitioner's claim is based only on the fact that Marshall had

not mentioned the purported confession in her testimony at the two previous trials in this matter.[24]

However, at the third trial, Marshall explained her failure to mention the confession earlier:

> I didn't mention this then.  I was just under a lot of pressure, you
> know, family pressure, and I was on parole at the time myself, just
> going through a lot.  You know, like today, I thank the Lord for my
> life today.  I've come a long ways, and I am very into the Lord, you
> know.  I have beautiful kids and my job, and I am just here for the
> truth.[25]

> Regarding her testimony at the third trial, Marshall stated on direct examination:

> Q.    Have you and I talked about this?

> A.    Yes, sir.

> Q.    Did I tell you that you do not have to do this?

> A.    Yes, sir, you did, you did.  I offered to just tell the truth, to go
> on with my life.

> Q.    Did you comfortable [sic] that whatever you knew was the
> truth was fine with me?

> A.    Sure.

> Q.    Did you ever feel pressure from me to say something to make
> the case better?

---

[24]  See State Rec., Vol. III of XI, transcript of April 21, 1998, pp. 150-72; State Rec., Vol. VI of XI, transcript of November 8, 2000, pp. 145-73.

[25]  State Rec., Vol. IX of XI, transcript of July 15, 2003, p. 14.

A.      No, sir.

Q.      You honestly believe that?

A.      I honestly believe that, you know, this is the truth and nothing but the truth.[26]

Petitioner's evidence shows nothing more than the fact that Marshall's testimony at the third trial was not entirely consistent with her testimony at the first two trials.  However, that is woefully short of the evidence required to support a claim that the prosecution knowingly presented perjured testimony.  <u>See</u> <u>Kutzner v. Cockrell</u>, 303 F.3d 333, 337 (5th Cir. 2002) ("[I]t is not enough that the [allegedly perjurious] testimony ... is inconsistent with prior statements." ).  Accordingly, petitioner has not met his burden of proof with respect to this claim and, therefore, the claim necessarily fails.

Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects petitioner's perjury claim.

<u>Confession</u>

Petitioner claims that the trial court erred in allowing introduction of his purported confession to Officers Juge and Weary.  In the last reasoned state court decision addressing this claim, the state district court held:

Petitioner contends his confession was not freely and voluntarily made, in violation of his <u>Miranda</u> rights.  In particular, the Petitioner

---

[26] State Rec., Vol. IX of XI, transcript of July 15, 2003, pp. 14-15.

re-urges an argument made to the court in a pre-trial motion to suppress the confession.  That motion was fully briefed and argued before the Court, outside of the presence of the jury.  This Court denied the motion, finding the Petitioner adequately <u>Mirandized</u> and the confession freely and voluntarily made.  That finding remains the same.  In addition, this claim could have been raised on appeal and the Petitioner elected not to do so.  Such failure on the part of the Petitioner is inexcusable and this ... claim is therefore denied.  (La. C.Cr.P. art. 930.4.)[27]

The state correctly notes that this claim is procedurally barred in this federal proceeding.  Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

<u>Finley v. Johnson</u>, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  "A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  <u>Fisher v. Texas</u>, 169 F.3d 295, 300 (5th Cir. 1999)

The procedural rule invoked with respect to the instant claim, i.e. that a post-conviction claim is waived if not asserted on direct appeal, is obviously independent of the merits of the federal claim.  Therefore, the Court needs only to determine whether that rule was "adequate."

---

[27] State Rec., Vol. X of XI, Order dated October 5, 2005, pp. 1-2.

"The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule.  Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997).  Here, petitioner has made no attempt whatsoever to establish that the rule was not strictly or regularly followed.  Moreover, in any event, it is clear that the procedural rule in question is an independent and adequate state court ground.  See Bell v. Cain, Civil Action No. 02-0259, 2002 WL 31002831, at *4 (E.D. La. Aug. 29, 2002) (Africk, J.); see also Gilkers v. Cain, Civil Action No. 05-841, 2006 WL 1985969, at *2 (E.D. La. May 30, 2006) (Duval, J.).

"When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, petitioner has demonstrated neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original).  Petitioner has made no effort in this federal proceeding to establish cause for his failure to raise this claim on direct appeal.  In that he has not shown cause, "it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court must determine whether the application of the procedural bar would result in a fundamental miscarriage of justice. In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). Applying that standard, the Court finds that petitioner does not make a persuasive showing that he is actually innocent of the charges against him. The evidence of petitioner's guilt, including but not limited to the physical evidence connecting him to the crime and his confession to Marshall, was overwhelming. Therefore, he has not demonstrated that any miscarriage of justice will result from the application of the procedural bar. Accordingly, petitioner's claim regarding the admission of his confession to Officers Juge and Weary is procedurally barred in this federal court.

Nevertheless, even if the claim were not procedurally barred, petitioner has not established that the claim has merit. "A habeas petitioner has the burden of proving facts which would lead the court to conclude that the confession was not voluntary." Uresti v. Lynaugh, 821

- 14 -

F.2d 1099, 1103 (5th Cir. 1987).  Petitioner clearly has fallen far short of meeting that burden.  He has offered nothing other than his own conclusory and self-serving statements to demonstrate the purported involuntary nature of the confession.  On the other hand, both Officers Juge and Weary testified under oath that petitioner was advised of his <u>Miranda</u> rights[28] prior to making his confession, that petitioner signed a form acknowledging his advisement of his rights, and that petitioner's confession was purely voluntary.[29]

Further, the voluntariness of a confession is a mixed question of law and fact.  <u>Soffar v. Cockrell</u>, 300 F.3d 588, 592 (5th Cir. 2002).  Therefore, a federal *habeas* court must defer to the state court's decision rejecting such a claim unless the petitioner demonstrates that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  In this case, petitioner has made no such showing.

<u>Ineffective Assistance of Counsel</u>

Petitioner claims that his trial counsel was ineffective.  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>See Strickland</u>, 466 U.S. at 697.

---

[28]  <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[29]  State Rec., Vol. VIII of XI, transcript of July 14, 2003, pp. 192-95 and 205-08

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson,

- 16 -

227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to a state court decision rejecting such a claim unless petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).

Petitioner first claims that his counsel was ineffective in failing to use Marshall's testimony from the first two trials, in which she made no mention of petitioner's purported confession to her, to challenge her testimony at the third trial.  However, "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."  Ford v. Cockrell, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005), cert. denied, 546 U.S. 1098 (2006); see also Parker v. Cain, 445 F.Supp.2d 685, 710 (E.D. La. 2006).  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  Moreover, it is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted: "There are

countless ways to provide effective assistance in any given case.  Even the best criminal defense

attorneys would not defend a particular client in the same way."  Id.

   In the instant case, defense counsel in fact cross-examined Marshall on several issues.

Moreover, on direct examination, she had already acknowledged that her testimony had changed and

explained why she was now being more forthcoming.  This Court cannot say that counsel's failure

to continue to challenge her on that point, at the risk of further highlighting her testimony and of

alienating the jury by appearing to badger an obviously sympathetic witness, was so deficient as to

violate petitioner's constitutional rights.  Further, in light of the other overwhelming evidence of

petitioner's guilt, petitioner clearly has not shown that the result of the proceeding would have been

different if only defense counsel had more aggressively challenged Marshall on this point.

   Petitioner also claims that his counsel was ineffective in conceding petitioner's guilt

during opening arguments.  The state district court rejected petitioner's claim, holding:

>   Petitioner next contends that his Counsel was ineffective
> when he "conceded Petitioner's guilt during opening statements."  In
> particular, Petitioner refers to Counsel's reference to a "muddled
> confession" which the State intended to produce at trial.  Upon
> review of the transcript, this Court opines that the comments to which
> Petitioner alludes in no way indicate Counsel conceded to the validity
> of the Petitioner's statement.  On the contrary, Counsel's statement
> was an attempt to disparage the State's case.  The statements were
> thus part of Counsel's trial strategy and neither amount to an
> impermissible reference to a confession nor act to concede
> Petitioner's guilt.[30]

   This Court has likewise reviewed defense counsel's opening statement.  At no point

in that statement did defense counsel explicitly or implicitly concede petitioner's guilt.  The whole

---

[30] State Rec., Vol. X of XI, Order dated October 5, 2005, p. 2.

point of counsel's statement was that petitioner was *not* guilty and was being tried based on suspect or innocuous evidence, i.e. "a muddled confession" and "the muddy shoes, the missing cutlery, and the mad girlfriend."[31]  Accordingly, petitioner's underlying allegation is incorrect as a matter of fact and, therefore, his claim necessarily fails.

Petitioner next claims that his counsel was ineffective in failing to object to the prosecution's vouching for the credibility of its witnesses in closing arguments.  It is true that it is improper for a prosecutor to vouch for a witness' credibility where there is underlying an implication that the prosecutor's statements are based on additional personal knowledge about the witness or on facts not in evidence.  See, e.g., United States v. Munoz, 150 F.3d 401, 414 (5th Cir. 1998).  However, such comments are not necessarily improper if it is apparent to the jury that the views are based on the evidence presented at trial rather than on personal knowledge of facts outside the record.  See, e.g., Nichols v. Scott, 69 F.3d 1255, 1282-83 (5th Cir. 1995); State v. Sawyer, 350 So.2d 611, 614 (La. 1977); State v. Palmer, 775 So.2d 1231, 1236 (La. App. 1st Cir. 2000).

In the instant case, the gist of the prosecutor's closing argument was that a witness' oath to tell the truth is not generally taken lightly and that the witnesses in this case had no motivation to lie in an effort to frame petitioner for a crime he did not commit.   There was no implication that the prosecutor's comments were based on additional personal knowledge about the witnesses or on facts not in evidence, and the comments simply do not cross an impermissible line.  Therefore, any objection to the comments would have been meritless.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  Clark v. Collins, 19 F.3d 959, 966

---

[31]  State Rec., Vol. VIII of XI, transcript of June 14, 2003, pp. 159-61.

(5th Cir. 1994); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Further, in any event, "[a] decision not to object to a closing argument is a matter of trial strategy." Drew v. Collins, 964 F.2d 411, 423 (5th Cir. 1992). Even where an objection might have some small chance of succeeding, an attorney is allowed to make a strategic choice to forego such an objection to avoid antagonizing the jury. See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992). Such deference to counsel's strategic choices is particularly appropriate here because, if counsel had objected, he would have simply invited the jurors to focus their attention on the prosecutor's closing argument and perhaps inflated its importance in their minds. Counsel can hardly been deemed to have performed ineffectively in choosing to avoid that unnecessary risk.[32]

Lastly, perhaps recognizing that the trial counsel's individual "errors" do not warrant relief, petitioner argues that the "errors," when considered collectively, do. This Court disagrees. When, as here, the individual contentions are meritless, that result cannot be changed simply by

---

[32] This is especially be true with respect to possible objections to a closing argument, which jurors are instructed not to view as evidence. In this case, for example, jurors were instructed:

> Statements made by the attorneys at any time during the trial are not evidence. ... In closing arguments, the attorneys were permitted to present their views on what the evidence has shown, or not shown, and what conclusions they think may be drawn from the evidence. The opening statements and closing arguments are not to be considered as evidence.

State Rec., Vol. IX of XI, transcript of July 15, 2003, pp. 40-41.

asserting them collectively.  United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006), cert. denied, 127 S.Ct. 2029 (2007); Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000).  As the United States Fifth Circuit noted with respect to analogous claims of cumulative error:  "Twenty times zero equals zero."  Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

Petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects those claims.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Timothy Spicer be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this thirtieth day of November, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**